UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| PERRIE BONNER and, <br> DEBORAH JACKSON, <br><br> Plaintiffs, <br><br> v. <br><br> CORTRUST BANK, N.A., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) NO. 2:05-CV-137 PS <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## OPINION AND ORDER

Plaintiffs received letters from Defendant CorTrust Bank purporting to offer preapproved MasterCard credit card accounts after CorTrust "prescreened" their credit reports. Plaintiffs claim that the solicitations did not contain the necessary disclosures mandated by the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq.* (FCRA). Plaintiffs also claim that the offer of credit is a sham, and therefore, did not constitute "a firm offer of credit" which, if true, would also be a violation of the FCRA. The Plaintiffs seek statutory damages and a permanent injunction. Before the Court is Defendants' Motion for Judgment on the Pleadings [Doc. 71], which we **GRANT**.

### I. BACKGROUND

**A.    Procedural History**

Before we address the facts of this case, a brief discussion of the procedural history is warranted. The Plaintiffs originally filed this matter as a class action on April 14, 2005. In that first complaint (and in a subsequent amended complaint filed on June 24, 2005), the Plaintiffs alleged that CorTrust violated 15 U.S.C. § 1681m(d) by failing to include required disclosures in

a clear and conspicuous manner. CorTrust moved for summary judgment [Doc. 13] on May 26, 2005. CorTrust argued that the Court could determine whether the required disclosures were clear and conspicuous as a matter of law based solely on the face of the documents.

Thereafter, on September 22, 2005, the Plaintiffs filed a second amended complaint [Doc. 62]. The second amended complaint contained a new theory of recovery which alleged that the credit offer was, in essence, a sham offer because once the applicable fees and finance charges were applied, the consumer was only left with a $75.00 line of credit. Thus, the Plaintiffs concluded that there was no real value to the offer and it did not constitute a firm offer of credit for purposes of the FCRA.

Following the filing of the Second Amended Complaint, CorTrust filed a motion for judgment on the pleadings [Doc. 71]. The motion for judgment on the pleadings raised two arguments. First, with respect to the Plaintiffs' original § 1681m(d) claim, CorTrust argued that the Fair and Accurate Credit Transaction Act of 2003 ("FACTA") eliminated any private right of action under the clear and conspicuous disclosure provisions of the FCRA. Second, with respect to the Plaintiffs' additional claim that CorTrust's offer was, in fact, a sham, CorTrust argued that the terms of the offer on its face comply with the FCRA's requirements for a "firm offer of credit."

The Court held oral argument on January 27, 2006. At that time, the Court granted CorTrust's Motion for Summary Judgment as to the § 1681m claims on the basis that FACTA eliminated private rights of action under § 1681m. (*See* [Doc. 90]). At the hearing, the Court also stated its intention to reduce this decision to writing. The Court then took the motion for judgment on the pleadings as to the sham offer claim under advisement. This opinion serves to

both reduce the Court's ruling on the § 1681m claim to writing and resolve the motion for judgment on the pleadings as to the sham offer claim.

**B.     Facts**

Plaintiff Perrie Bonner received a MasterCard credit solicitation from CorTrust Bank in February 2005 via U.S. Mail. Plaintiff Deborah Jackson received a virtually identical MasterCard credit solicitation from CorTrust Bank in April 2005. Both of these solicitations contained language that stated: "The Bank's initial offer of a credit card to you was based on information obtained from a credit reporting agency . . . " (Exs. A and B to 2nd Amend. Cmp.). Defendants thus engaged in "prescreening" of consumers based on information in credit reports provided by a consumer reporting agency. The pre-screening "was intended to identify persons who have poor credit or have recently obtained bankruptcy discharges, for the purpose of targeting them for subprime credit." (2nd Am. Cmp. at ¶ 22). Neither Plaintiff authorized CorTrust to use or access his credit report nor initiated any transaction with CorTrust.

The Plaintiffs' first claim arises out of the opt-out disclosures that must be present pursuant to the FCRA. These disclosures inform consumers that they have a right to opt-out of prescreening activities and direct them how to exercise that right. In other words, if a person does not want to be pestered with credit card solicitations, there is a procedure that allows them to exercise that choice. In this case, the disclosures were located on the Terms and Conditions sheet that accompanied the credit card solicitation. The Terms and Conditions were described on the first page of the offer as follows: "See enclosed Terms and Conditions for information regarding rates, fees and other terms and conditions applicable to this pre-approved offer." (2nd Am. Cmp. at ¶ 32(b)). The offer also required a consumer accepting the offer to certify that

3

he/she has "read, meet[s], understand[s] and agree[s] to the terms, conditions and fees listed on the enclosed Terms and Conditions insert." (*Id*.).

The Plaintiffs argue that no one who did *not* want a credit card would read the Terms and Conditions. Why would someone who does not want a new credit card read the terms and conditions? Yet that is where the required disclosures are found. According to the Plaintiffs, it is this very group of people – those who do not want to be pestered with credit card solicitations – who need the required disclosures the most.

The Plaintiffs second claim which is based on the terms of the offer itself, is that the credit card offer made here has no real value and, therefore, is not a firm offer of credit. Both Bonner's and Jackson's solicitations contain materially identical terms. The initial offer of credit was for $250 credit line. (Exs. A, B to 2nd Am. Cmp. at 1). The Terms and Conditions insert identifies the interest rate as 18.9% with a monthly grace period, explains the method used to compound interest, and describes the repayment period. However, the offer is subject to a number of fees. First, there is an initial "acceptance fee" of $119.00. Moreover, there is an annual membership fee of $50 and a "participation fee" of $72.00 which is billed at a rate of $6 per month. Bonner's offer also included a one-time "processing fee" of $9.00. All of these fees are charged against the credit line on the consumer's first bill – a fact which is duly noted on the initial offer page.[1]

In addition, the solicitation contains an offer to join the "Premium Club." The Premium Club offers 10-50% discounts at various national hotel and car rental chains. Membership costs

---

[1] The disclosure reads: "* . . . Due to fees that are billed on your first statement, your available credit may start at $75 but grows as you make timely payments."

$4.95 per month and is billed directly to the consumer's new MasterCard account. The Borrower can obtain the credit card without choosing to enroll in the Premium Club. The Plaintiffs argue that the Premium Club offer demonstrates that the credit card solicitation is not really a firm offer of credit, but rather is a solicitation for the Premium Club.

## II. DISCUSSION

Defendants move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Rule 12(c) permits a party to move for judgment on the pleadings after the parties have filed a complaint and an answer. In considering such a motion, a court applies the same legal standards that apply to motions to dismiss under Rule 12(b)(6) for failure to state a claim on which relief can be granted. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Local Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003). A motion under Rule 12(c) is not granted "unless it appears beyond a doubt that the non-moving party cannot prove any facts that would support his claim for relief." *Id.* (citations and alterations omitted). The Court, when ruling on a motion for judgment on the pleadings, must "accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000).

**A.  Plaintiff's Claims Alleging Violations of the "Clear and Conspicuous" Provision Are Barred by FACTA**

The FCRA places limits on when a creditor may access a consumer's credit report without the consumer's authorization. The FCRA allows a creditor to access a consumer's credit report if the creditor extends a "firm offer of credit" to the consumer. 15 U.S.C. § 1681b(c)(1)(B)(I). However, when a creditor makes a "firm offer of credit" to a consumer, the solicitation must include certain "clear and conspicuous" statements. 15 U.S.C. § 1681m(d)(1).

5

Such statements include a statement that the consumer has the ability to prevent future use of his credit report for pre-screening purposes. *Id*.

This case presents the third time in which this Court has considered and rejected private claims for violations of 15 U.S.C. § 1681m after Congress passed the Fair and Accurate Credit Transactions Act ("FACTA") which amended various provisions of the FCRA.[2] Specifically, § 311(a) of FACTA added a subsection (h) to §1681m of the FCRA which, in essence, created new enforcement rights and obligations. Pub. L. No. 108-159, § 311(a), 117 Stat. 1952, 1988-89 (2003).

In *Bonner v. Home123 Corp.*, No. 2:05cv146 (N.D. Ind. May 25, 2006), we held that FACTA eliminated any private right of action for a violation of § 1681m. In so holding, we joined a significant number of district courts who interpreted the plain language of § 1681m(h)(8)(A) to mean that *all* enforcement of *any* action under § 1681m shall be done exclusively by federal agencies and officials. *See, e.g., Bruce v. Grieger's Motor Sales, Inc.*, 422 F. Supp. 2d 988, 992 (N.D. Ind. 2006) (Lozano, J.); *Putkowski v. Irwin Home Equity Corp.*, 423 F. Supp. 2d 1053 (N.D. Cal. 2006) (Hamilton, J.); *Stavroff v. Gurley Leep Dodge, Inc.*, 413 F. Supp. 2d 962, 966-67 (N.D. Ind. 2006) (Sharp, J.); *Harris v. Fletcher Chrysler Prods., Inc.,*

---

[2]We note that because of the procedural posture of this case – with summary judgment on the § 1681m claims filed before the onslaught of district court opinions upon which we rely were issued – the parties did not submit significant briefing or argument on this issue. Instead, the motion for summary judgment was based on the substantive merits of the underlying claim. Nevertheless, CorTrust raised the FACTA argument in its subsequent Motion for Judgment on the Pleadings. We include this brief discussion of the § 1681m issue to supplement the Court's oral ruling at the January 27, 2006 hearing. Moreover, the Court adopts the opinion it issued in *Bonner v. Home123***,** No. 2:05cv146 (N.D. Ind. May 25, 2006) as further support of this decision at least insofar as that opinion addresses solicitations – like the ones made here – issued after December 1, 2004.

1:05-CV-1140, 2006 WL 279030, at *3 (S.D. Ind. Feb. 2, 2006) (McKinney, C.J.); *Villagran v. Freeway Ford, Ltd.*, Civ. A. H-05-2687, 2006 WL 964731, at *1 (S.D. Tex. Jan. 19, 2006) (Ellison, J); *Wanek v. C.M.A. Mortgage, Inc.*, 05 C 4775 (N.D. Ill. Dec. 12, 2005) (Lindberg. J.) (minute order); *Hernandez v. Citifinancial Servs., Inc.*, No. 05 C 2263, 2005 WL 3430858, at *2 (N.D. Ill. Dec. 9, 2005) (Filip, J.); *McCane v. America's Credit Jewelers, Inc.*, Civ.A 05 C 5089, 2005 WL 3299371, at *3 (N.D. Ill. Dec. 1, 2005) (Conlon, J.); *Pietras v. Curfin Oldsmobile, Inc.*, Civ.A. 05 C 4624, 2005 WL 2897386, at *4 (N.D. Ill. Nov. 1, 2005) (Conlon, J.); *Perry v. First Nat'l Bank*, No. 05 C 1470, slip op. at 2 (N.D. Ill. Sept. 13, 2005) (Gettleman, J.); *Murray v. Household Bank (SB), N.A.*, 386 F. Supp. 2d 993, 999 (N.D. Ill. 2005) (Gettleman, J.); *Murray v. Cross Country Bank*, 399 F. Supp. 2d 843, 845 (N.D. Ill. 2005) (Zagel, J.). The Court has located only one case that has held to the contrary. *See Barnette v. Brook Road, Inc.*, __ F. Supp. 2d __, 3:05CV590, 2006 WL 1195913 (E.D. Va. May 3, 2006).

15 U.S.C. § 1681m(h)(8) provides for the enforcement of all obligations under § 1681m, including claims such as the Plaintiffs' in this case, to be undertaken by federal agencies and officials. It reads:

(A)  No civil actions

   Sections 1681n and 1681o of this title shall not apply to any failure by any person to comply with this section.

(B)  Administrative enforcement

   This section shall be enforced exclusively under section 1681s of this title by the Federal agencies and officials identified in that section.

*Id*. We read the language "this section" in § 1681m(h)(8)(B) to refer to § 1681m in its entirety and find nothing ambiguous in this language. Moreover, recent *dicta* from the Seventh Circuit

7

further supports this conclusion. *See Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 951 (7th Cir. 2006) ("A recent amendment to the [FCRA] abolishes private remedies for violations of the clear-disclosure requirement, which in the future will be enforced administratively . . . .").

As such, consistent with our rationale in *Bonner v. Home123*, which we adopt here, it is clear to the Court that Congress, for better or worse, has taken enforcement of the statute away from private litigants and instead has tasked federal agencies to enforce § 1681m. Thus, any private right of action for a violation of §1681m has been eliminated.

**B.      CorTrust's Offer of Credit Is Not A Sham Offer**

The FCRA allows companies to scour credit histories of potential customers if it is done to make a "firm offer of credit." With the grant of summary judgment on the § 1681m claim, the only claim that remains is the contention that CorTrust's offer of credit had no real value and, therefore, was not a "firm offer of credit." We conclude that the offer made by CorTrust, while plainly a lousy deal for consumers of credit, is nonetheless a firm offer of credit and thus CorTrust's accessing of the Plaintiffs' credit histories was done for a permissible purpose.

Under the FCRA, a lender may obtain a consumer's credit report only with the written consent of the consumer or for certain permissible purposes, one of which is to make to the consumer a "firm offer of credit." *Murray v. Finance America, LLC*, 2006 WL 862832, *2 (N.D. Ill. April 2, 2006). The FCRA defines a "firm offer of credit" as "any offer of credit or insurance to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer." 15 U.S.C. § 1681a(l).

The Seventh Circuit has clarified that it is not enough for an offer of credit to be honored

8

in order for it to be "firm" for purposes of the FCRA. Instead, a "firm offer" must also have "sufficient value for the consumer to justify the absence of the statutory protection of his privacy." *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 726 (7th Cir. 2004). Thus, the Court must look at "the *entire* offer and the effect of *all* the material conditions that comprise the credit product in question" to determine whether the offer was a legitimate credit product or merely a guise for solicitation. *Id*. at 727 (emphasis in original). *Cole* therefore holds that if the offer is really nothing more than an effort to pump some product – in *Cole* the solicitation was really an effort to sell cars, not credit – then it is not a firm offer of credit.

In making the determination of whether there is a firm offer of credit, we look to the four corners of the offer to determine if it is useful to the normal consumer as an offer of credit and then assess whether the terms are honored when the consumer accepts. *Murray v. GMAC Mortgage Corp.*, 434 F.2d 948, 955-56 (7th Cir. 2006). If the credit offer meets both these criteria, it meets the statutory definition of a "firm offer." *Id*. at 956.

Since *Cole* and *Murray*, district courts in this circuit have twice examined alleged "firm offers" and found them to be shams. First, in *Murray v. Finance America*, *supra*, the district court examined a letter in which the defendant "offered" a pre-qualified loan to the plaintiff. *Finance America*, 2006 WL 862832 at *1. However, to accept this offer, the plaintiff had to call the defendant "to find out how much you qualify for." *Id*. The letter provided virtually no additional information about the loan: it did not contain the minimum amount of credit to be extended to the consumer; did not state the interest rate or how it would be computed; and did not explain whether the loan would be subject to fees, costs, charges or points. *Id*. As a result, the district court concluded that the letters did not constitute firm offers of credit because they

9

were "missing important, concrete terms of the home loans and confer[red] little or no value to the consumer." *Id*. at *3.

Similarly, in *Hernandez v. Chase Bank USA, N.A.*, 2006 WL 1194902 (N.D. Ill. May 2, 2006), the plaintiff received an "offer" of a loan with his personal residence to serve as collateral. *Id*. at *1. The mailer was unclear about the amount of the loan – noting that it could be between $10,000 and $100,000 – and did not contain information about the interest rate or repayment period. *Id*. at *4. Moreover, the loan was subject to verification of terms that go beyond the preselection criteria. *Id*. As a result, the Court concluded that the offer was "not 'firm' but rather . . . a solicitation for a credit product that is undefined save the requirement that [the plaintiff's] residence serve as collateral." *Id*.

Unlike the very general offers in those two cases, CorTrust's offers meet the *Cole* criteria. At the outset, we note that the Plaintiffs do not allege that CorTrust would not have honored the offers should the Plaintiffs have chosen to accept them. Thus, we are concerned only with whether the offer has value to the ordinary consumer.

Here, CorTrust sent the Plaintiffs a clear offer that contained specific terms. The offer provides an initial line of credit of $250. In addition, the Terms and Conditions insert clearly explains the interest rate, the method for compounding interest, and the repayment period. As the Plaintiffs correctly note, the offer is subject to a number of fees including an initial "acceptance fee" of $119.00, an annual membership fee of $50, and a participation fee of $72.00 which is billed at a rate of $6 per month. Because all of these fees are charged against the credit line on the consumer's first bill, the net result is an initial available credit of only $75.00 – a fact which the mailer clearly discloses. However, even with the fees, the offer has a discrete value of

$75.00. Thus, it is more than a mere solicitation because if the consumer accepts the offer, he has, at minimum, a credit line of $75.00. Accordingly, the offer has $75.00 in value to the consumer which he may choose to accept or reject.

Although the Plaintiffs do not dispute that the offer has $75.00 in value, they urge us to find, as a matter of law, that $75.00 is not sufficient value to constitute a firm offer of credit. We decline to do so because *Cole* and *Murray* do not support this view. Neither *Cole* nor *Murray* hold that a "firm offer" must have some specific minimum credit line in order to have value to the ordinary consumer. In other words, we need not determine whether the offer is a good one, only whether it is an offer with some value to a consumer as an extension of credit. Thus, we must consider the value of the offer only as a means to distinguish between true offers of credit products and mere solicitations. *Murray*, 434 F.2d 948, 955 ("To separate the use of credit data to sell products (forbidden) from the use of credit data to make firm offers of credit (allowed), we held, a court must determine whether the offer has value as an extension of credit alone.").

Here, the offer of credit is for $250.00 but in the first month only $75.00 is actually available in credit; the balance are the fees associated with obtaining the credit. However, if the borrower pays off the balance in the first month, the amount of available credit increases to the full $250 and then even higher if the borrower makes timely minimum payments. (*See* 2nd Am. Cmp. at Ex. B). We do not mean to imply that this is necessarily a good deal for consumers, although for someone having difficulty obtaining credit, it may well be. But this editorializing is neither here nor there. The offer has some value, and it is not a solicitation, as in *Cole*, to buy some other product. It is therefore a firm offer of credit under the FCRA.

The Premium Club solicitation included with the mailer does not change this result. As

an initial matter, we note that the enrollment in the Premium Club is not automatic. Instead, the consumer must initial a separate box on the acceptance form to enroll. Moreover, the consumer is under no obligation to use his or her credit line to purchase membership in the Premium Club. It is here that the Plaintiffs' analogy to the *Cole* case fails. In *Cole*, the plaintiff received an "offer" of credit from U.S. Capital and Gleason Chevrolet. *Cole*, 389 F.3d at 722-23. The offer purported to allow for a credit card from U.S. Capital with a credit limit of "up to $2,000.00" and an offer of financing from Gleason Chevrolet for "up to $19,500" in automotive credit. *Id*. Upon closer inspection of the offer's terms, however, it became clear that the offer constituted no more than a $300.00 credit line to be used solely for the purchase of a car from Gleason Chevrolet. *Id*. at 728. As such, the Court found that "the relatively small amount of credit *combined with the known limitations of the offer – that it be used to purchase a vehicle –* raises a question whether the offer has value to the consumer." *Id*. (emphasis added). In contrast, in this case, there is no obligation that the Plaintiffs use their credit lines to purchase membership in the Premium Club. In other words, the consumer can reject the Premium Club offer and still get the credit. Thus, the addition of the Premium Club solicitation in the mailer does not call into question the underlying value of the credit offer.

In sum, CorTrust's mailers contain sufficient information for the Court to determine, as a matter of law, that the offers constitute "firm offers of credit" as defined by the FCRA and clarified in Seventh Circuit case law. As such, CorTrust's Motion for Judgment on the Pleadings is **GRANTED**.

## III. CONCLUSION

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings [Doc. 71] is **GRANTED**. Also pending before the Court is the Plaintiffs' Motion for Class Certification [Doc. 35]. With all claims now resolved in CorTrust's Favor, that motion is **DENIED AS MOOT**. The Clerk shall treat this action as **TERMINATED**.

**SO ORDERED.**

ENTERED: July 12, 2006

s/ Philip Simon<br>
PHILIP P. SIMON, JUDGE<br>
UNITED STATES DISTRICT COURT